Staci Burk
2487 S. Gilbert Road #106-609
Gilbert, Arizona 85295
stacigriffinburk@yahoo.com
(480) 343-4518
Proper

# DISTRICT COURT OF ARIZONA

# UNITED STATES DISTRICT COURT

| | |
|---|---|
| **STACI BURK**, a single woman,<br><br>Plaintiff<br><br>vs.<br><br>**KELLY TOWNSEND, RYAN HARTWIG, MICHEAL FLYNN, SIDNEY POWELL, DOUG LOGAN, TOWN OF FLORENCE, DOES I-X.**<br><br>Defendants. | CV-22-1967-PHX-DMF<br><br>**OPPOSITION TO**<br><br>**MOTION TO DISMISS**<br><br>*(Honorable Deborah Fine)* |

Plaintiff Staci Burk respectfully opposes Defendant's Motion to Dismiss Plaintiff's 42 U.S.C. §1983 claim alleging Defendant Townsend while purporting to act with "plenary" authority to investigate election fraud, engaged in a pattern and course of conduct with multiple actors working together engaging in acts in direct violation of Plaintiff and her family's individual constitutional rights under the First, Fourth, and Fourteenth Amendments.

Due to the complexity of Plaintiff's claims, Plaintiff included context and history as background along with some of the facts behind her claims. Plaintiff alleged facts that Defendant represented herself while acting in her capacity as a government official with such authority, using Defendant's words, "plenary power and authority to investigate election fraud." In doing so, Defendant Townsend solicited a group which she had engaged throughout 2020 who formed outside the Arizona Capitol, to, using Defendant's description, assist her as "vigilantes" to investigate election fraud.

Plaintiff alleged in her complaint that around this time, Plaintiff was contacted by "Jane Doe," in Seattle who believed she saw suspicious ballots come through her mail facility and Doe could not get through to the FBI. (SAC ¶59-60). Doe was told by social media acquaintances of Plaintiff that Plaintiff knew people who might be able to help her. Plaintiff first attempted to assist Doe reach the FBI and when she could also not get through, contacted Defendant Townsend who was House Elections Chair, several days after the election. (SAC ¶61-62). Townsend pressured Plaintiff to get an affidavit from Doe and when she refused, Townsend spread at the rally that Plaintiff had a "hot lead," which resulted in people showing up outside Plaintiff's home. (SAC ¶62-66, 97, 101). Defendant then exploited that to allege the people outside Plaintiff's home were "deep state," and would do anything including kill Plaintiff and her family to cover up election fraud. (SAC ¶139, 147, 158, 170, 192, 210, 212).

Plaintiff later learned that Defendant Townsend from the day after the election in front of the Capitol at Stop the Steal rally, addressed the crowd and solicited her QAnon and militia followers' assistance to vigilante style investigate election fraud. (SAC ¶56-64). Shortly thereafter two of Defendant's associates and rally attendees gained access to Plaintiff inside her home under false pretenses as one associate, Scott Koch, claimed he was a government agent

who told Plaintiff his agents were security for a counterfeit ballot operation that took ballots to the Maricopa County Election Center. (SAC ¶103-110). Defendant Townsend then bolstered Koch's fabricated story claiming she personally witnessed Koch at the election center behind the secure line acting nefariously while ballots were being counted. (SAC ¶117-119).

Defendant Townsend and her associates, including those who had deployed to D.C. and were there with Rudy Guiliani and Defendant Sidney Powell, applied extreme pressure and coercion to pressure Plaintiff into signing an affidavit for a FISA warrant to seize the Maricopa County election center before certification. (SAC ¶117-120). Plaintiff refused to sign the affidavit without knowing more about Koch. (SAC ¶115-119). Maricopa County certified without the FISA warrant to seize the election center. While the group pressured Plaintiff for the affidavit, Plaintiff disclosed she secretly recorded Koch because she felt uneasy (SAC ¶108).

The day after Maricopa County certified, there was an attempted break-in at Plaintiff's home and she called 911. (SAC ¶124). An associate of Guiliani, Powell, and Defendant Townsend responded and to Plaintiff's home while police were present responding to the call. (SAC ¶124-129).

As outlined below, Plaintiff pled in her complaint specific allegations that ***Defendant Townsend while proclaiming her authority as a government official with "plenary" power to investigate election fraud, directly via phone and using Shattuck as her agent in front of Florence Police, ushered in a heavily armed paramilitary former law enforcement police force which Defendant Townsend and/or her co-Defendants then commanded and directed as their agents.*** (SAC ¶136-141). ***This police force, consisting of over twenty heavily armed men, rotating out with three to four at a time every three to four days, held Plaintiff and her son hostage in their home, in direct violation of Plaintiff's constitutional right to be free from***

*unreasonable search and seizure, commandeering Plaintiff's home for seven weeks.* (SAC ¶181, 191-192, 208-212, 218-219).

As Plaintiff pled *context* in her complaint, including Defendant's QAnon and militia affiliations going back over a decade before the 2020 election, along with Defendant's personal contact and relationship with former President Trump before he became president as they worked on Obama election-related conspiracies, and her relationship with Trump attorneys surrounding the 2020 election prior to the 2020 election, Plaintiff did so for *context* because the shortest most concise version, otherwise sounds implausible under *Twombly* standards that a government official, asserting their authority, would act in such an egregious, extreme, and outrageous manner. (SAC 17-18, 24-25, 28-30, 34-36, 47, 48, 56, 64-66, 81, 82).

Where the complaint has been filed by a pro se plaintiff, as is the case here, courts must "construe the pleadings liberally ... to afford the petitioner the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).

**STANDARD OF REVIEW**

To survive a Rule 12(b) motion to dismiss, the pertinent question is whether the factual allegations, assumed to be true, "state a claim to relief that is plausible on its face." *Id.* (citing *Twombly*, 550 U.S. at 570). All factual allegations set forth in the complaint are taken as true and construed in the light most favorable to plaintiffs. *Lee v. City of L.A.*, 250 F.3d 668, 676 (9th Cir. 2001).

Fed. R. Civ. P. 8(f) requires a liberal reading of complaints. A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts supporting his claim, would entitle him to relief. Thus, these liberal pleading rules

require only that the complaint sufficiently establish a basis for judgment against the defendant. *Yamaguchi v. United States Dep't of the Air Force,* 109 F.3d 1475, 1477 (9th Cir. 1997). Rule 8 "demands more than an unadorned, the-defendant- unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Plaintiff contends her complaint contains sufficient factual allegations which under *Twombly* and *Iqbal*, and set forth the basis of her claims which taken in light most favorable to Plaintiff to establish a reasonable basis for relief. Arizona is a notice pleading state. Plaintiff contends she provided sufficient facts for Defendant to understand the "gist" and nature of her allegations sufficient to answer her complaint.

Plaintiff pled numerous facts, that are non-conclusory, and if taken as true, satisfy elements of a 42 USC 1983 claim alleging; **Defendant Townsend asserting governmental authority as House Elections chair ("color of law"), in which Defendant herself claimed she was acting in her words with "plenary" power, to investigate election fraud** (SAC ¶56, 147). *As part of that effort and course of conduct, Defendant used fear, coercion, and intimidation, to pressure Plaintiff* (SAC ¶63, 82, 101, 117, 137, 181, 182, 224)*, while she was in an especially vulnerable state as Florence Police were present having responded to a 911 call for an attempted break-in* (SAC ¶129, 141, 164)*, to usher into Plaintiff's home, by force,[1] a heavily armed paramilitary security team, consisting of former law enforcement.* (SAC ¶137-139, 192).

---

[1] Defendant Townsend was assisted by John Shattuck, an associate of Defendants Townsend and Flynn, who was physically present entering in Plaintiffs home the open door as Florence Police were present on scene and brought with him the leader of the heavily armed paramilitary "security team," who employed Defendant's associate Scott Koch (SAC ¶   ).

5

*At that time, Defendant Townsend coerced and insisted Plaintiff needed the security team because she and her family's lives were in danger* (SAC ¶137). *This police force, first of one group, substituted out for another, which Defendant herself personally pushed, consisting of over twenty men, three to four at a time, rotating out every three to four days,* **occupying Plaintiff's home continuously for <u>seven weeks</u> who held Plaintiff and her son hostage in their own home in violation of her Fourth Amendment, right to be free from unreasonable search and seizure,** (SAC ¶192, 210, 218), *using fear, intimidation, and coercion as they pursued Defendants goal of either investigating election fraud or creating the appearance of investigating election fraud,* (SAC ¶139, 147, 158, 170, 192, 210, 212 ). **This sophisticated well trained, and heavily armed police force, consisting of former FBI, law enforcement, intelligence community, and military officers, while holding Plaintiff and her family hostage with fear and coercion, ultimately gained access to the Seattle whistleblower through manipulation, fear, and intimidation of Plaintiff and her family, as well as the Seattle woman** (SAC ¶192, 200-203), *in order to secure an affidavit for Defendant Powell's election fraud case filed in this Court under Bowyer v. Ducey.* (SAC ¶195, 204-205). *These sophisticated law enforcement, intelligence, and military specialists, working under Defendants Townsend, Flynn, and Powell, also touted skills in "information warfare,"[2] as they repeatedly gaslit, intimidated, manipulated, and coerced Plaintiff into believing there was election fraud* (SAC ¶192, 210-213). *Defendant Townsend and her co-Defendants repeatedly attempted to coerce Plaintiff to speak publicly about election fraud stories the team gaslit her with* (SAC ¶195, 199), *to create public interest and cover justifying*

---

[2] Defendant mentioned "information war," to Plaintiff months before the election and spoke about it while she was on the dias at the quasi-legislative hearing led by Rudy Guiliani on November 30, 2020 (SAC ¶  ).

*Defendant pursuing a forensic audit accessing paper ballots and voting machines with her co-Defendants, claiming to investigate election fraud claims in her role as a government official.*

## ELEMENTS OF 42 U.S.C. 1983

42 USC 1983, provides a civil action for the deprivation of civil rights, two elements are necessary for recovery: the plaintiff must prove that the defendant has deprived him of a right secured by the "Constitution and laws" of the United States, and that the defendant deprived him of this constitutional right "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory"; this second element requires that the plaintiff show that the defendant acted "under color of law." Adickes v. S. H. Kress & Co., 398 U.S. 144, 146

Plaintiff contends Defendant acted under "color of law," when Defendant claimed she that acting in her role as House Elections Chair she had "plenary" power to lead and conduct an investigation into election fraud and in fact following the 2020 election, did just that. As part of Defendant's effort, she sought access to a witness that Defendant felt Plaintiff was unreasonably blocking her access to. In order to gain access to the woman, Defendant engaged in a course of conduct that involved using fear, coercion, and manipulation, to install a private Stasi-style police force in Plaintiff's home, under the guise of a "security team," who then occupied Plaintiff's home engaging in fear, intimidation, coercion, and manipulation as they sought proof of election fraud and access to the witness in Seattle, that Defendant wanted access to for an affidavit.

Plaintiff also added the Town of Florence, specifically the Town of Florence police Department to her claim to the extent that the Town of Florence police department, in their presence and chaos responding to a 911 distress call for an attempted break-in, Florence Police

officers appeared to know the former law enforcement officer who previously worked for Pinal County Sheriff Mark Lamb, and led the security team that Defendant Townsend along with Defendant Flynn's associate, John Shattuck, ushered in blurring the lines between the official police and government actors and the private heavily armed paramilitary "security team," who also claimed to be work for the government as a contractor. The affirmative conduct sufficient for a state-created danger claim under the Due Process Clause requires an action that affirmatively places the plaintiff in a position of danger; more specifically, the government actor must affirmatively create an actual, particularized danger that the plaintiff would not otherwise have faced. U.S.C.A. Const. Amend. 14. Doe v. Round Valley Unified School Dist., 873 F. Supp. 2d 1124 (D. Ariz. 2012). "State-created danger," or similar theory, as basis for civil rights action under 42 U.S.C.A. § 1983, 159 A.L.R. Fed. 37, 2.2.

     Defendant in her Motion deliberately ignores the appropriately pled facts and allegations while cherry-picking ***context*** as a deflection and diversion from those facts. Plaintiff provided that context to show relevant history that without such context may lead the Court to suspect the claim was outlandish or implausible. Plaintiff contends such context was necessary to overcome plausibility under the *Iqbal* standard. It is difficult to comprehend that any government official would behave in such a blatant violation of an individual's constitutional rights, while claiming "plenary" government authority.

     Plaintiff attempted multiple ways to organize her allegations in her complaint and did so in a chronological format including specific facts of some of Defendant's actions combined with relevant context. In her initial complaint, Plaintiff used generalities claiming, "Defendant and her associates did…," largely out of fear of being more specific given the history with Defendant and her associates.

In Plaintiff's amended complaint, Plaintiff described more specifically what Defendant and each of her co-Defendants did directly to Plaintiff and how their actions individually and taken as a whole while working together directly violated Plaintiff's individual constitutional rights under the Fourth, First, and Fourteenth amendments as the group held Plaintiff and her family hostage in their home for weeks using fear, intimidation, and coercion, to gaslight a narrative and accomplish Defendant's legislative objective as House Elections Chair investigating election fraud and pursuing a "forensic audit" that she had been seeking since 2017.

Plaintiff alleged after separating physically from Defendant's police force which held Plaintiff and her family hostage using fear, gaslighting, and coercion, Plaintiff began to see the fabrications and network behind the effort more clearly. (SAC ¶117-120). Defendant Townsend became concerned that Plaintiff might speak publicly and expose the ongoing effort by her and a colleague in the Arizona Senate. As a result, Defendant repeatedly gaslit, coerced, and threatened Plaintiff not to speak publicly about what she witnessed and had come to believe which was there was no credible evidence of widespread election fraud. (SAC ¶117-120).

Defendant's gaslighting, manipulation, implied threats, and coercion of Plaintiff, to not publicly express Plaintiff's own truth and opinion, so that Defendant could continue to pursue her agenda of the audit with her co-Defendants, while acting under "color of law" claiming plenary authority as a government official[3], had a chilling effect in violation of Plaintiff's First Amendment right to speak freely that she did not believe there was any credible evidence of election fraud, based on her personal experiences with Defendant and her associates. (SAC ¶322-323).

---

[3] Defendant Townsend was a House member from 2010-2020. In the 2020 election, she was elected to the Senate.

*Plaintiff asks that due to the complexity of her allegations, including multiple actors working together, and the psychological damage Defendant's actions had on her ability to articulate concisely, the court to consider accepting Plaintiffs SAC heavily applying Rule 8(e),"Pleadings must be construed so as to do justice," over strictly adhering to Rule 8(a)(2).*

Plaintiff contends she has pled sufficient facts in her complaint which when taken in light most favorable to Plaintiff and deemed as true, satisfy the necessary elements of her 42 U.S.C. 1983 claim. Because of the psychological trauma Defendant and her family experienced, Plaintiff has difficulty organizing her claims concisely under 8(a)(2) in a way that a person who has not been severely traumatized by the events and circumstances would be able to perform.

Plaintiff is not an attorney. It is still difficult for Plaintiff to write about, articulate, and organize what happened because it was so traumatizing. The Constitutional right to petition Courts for redress of grievances was not intended to be placed so far out of reach that an average citizen with a grievance bringing forward serious claims of a government official abusing their power in a manner that violates an individual's constitutional rights, would encounter the Courts as being so complicated and cumbersome that it is an inaccessible avenue for redress of such grievances. Plaintiff contends Rule 8(e), provides the Court latitude to weigh its analysis in the interests of justice considering all intervening factors.

Plaintiff attempted to use the framework provided by the Court while alleging specific facts and actions by the multiple actors and their roles as they interacted directly with Plaintiff and one another organizing her allegations in a timeline with context woven throughout, and addressing how those actions, specifically Defendant Townsend's actions, specifically violated Plaintiff's Fourth and First Amendment rights.

Plaintiff's 42 U.S.C. 1983 claim, while it is complicated, is very serious. This action appears to be the only reasonable opportunity or avenue for Plaintiff to redress her grievances. In

the interest of justice, Plaintiff asks the Court to not dismiss this action as it would forever bar any kind of redress of her claims.

The local police due to their albeit much smaller role in what occurred overall, and that former President Trump held a rally in the Town of Florence with 25,000 residents in January 2022, gave the Town and Police Department a large payment for hosting the event left Plaintiff with civil action as her only recourse to redress her grievances. Recently the Town of Florence Police Chief told Plaintiff she is well liked in the Town, she can call him anytime on his cell and they will protect her. However, Plaintiff and her family due to the trauma and safety concerns, have not returned to their home in over two years aside from a couple of brief check-ins.

Plaintiff asserts that while she did have an extended time to amend her complaint, she was hospitalized and/or medically incapacitated for most of the time period allotted, and the Court accepted Plaintiff's Second Amended Complaint correcting her mistake before the Court opened on Monday. [4]

## CONCLUSION

Plaintiff requests the Court consider Fed. R. Civ. P. 8(f), which requires a liberal reading of complaints, and that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts supporting his claim,

---

[4] Despite Defendant falsely alleging Plaintiff drafted her complaint with exhibits over the weekend, Defendant is wrong. Plaintiff learned of her mistake when Defendant and her associates attempted to push a smear story and a right-wing "reporter," emailed Plaintiff asking for the full document because only the first page appeared on PACER. However, Plaintiff admits that once she realized this mistake, before uploading the document she removed Defendant John Shattuck and apologizes there were still references to the words "Defendant Shattuck" in the body of her complaint, such as in ¶93, 144, 146, etc. Plaintiff removed Shattuck to save additional costs and focus on the primary more culpable actors that caused her injuries.

would entitle him to relief. The liberal pleading rules require only that the complaint sufficiently establish a basis for judgment against the defendant. *Yamaguchi v. United States Dep't of the Air Force,* 109 F.3d 1475, 1477 (9th Cir. 1997). Additionally Plaintiff requests that in the interest of doing justice, given the totality of the circumstances including Plaintiff's psychological difficulty organizing these events due to the extensive psychological harm with the intentional gaslighting, deception, terror, and fabrications, that occurred as a direct result of Defendant's actions, Plaintiff requests the Court liberally apply Rule 8(e), so as to do justice, and thus deny Defendant's Motion to Dismiss and order that Defendant file an answer to her Complaint.

Alternatively, should the Court decide that Plaintiff's complaint is insufficient, Plaintiff asks the Court to grant Plaintiff a stay to locate an attorney to at minimum assist her in drafting a complaint which satisfies the Court. Plaintiff has also filed a request for leave to file an amended complaint and provided the Court a more concise pleading of her allegations. If neither her second or third amended complaints are sufficient Plaintiff requests a stay for a period of time for Plaintiff to attempt to locate assistance of counsel to correct the deficiencies and conform to the courts request.

*Staci Burk*

STACI BURK
2487 S. Gilbert Road #106-609
Gilbert, Arizona 85295
stacigriffinburk@yahoo.com
(480) 343-4518
Proper

Filed this 21st day of August 2023;

United States District Court
District of Arizona
401 W. Washington St., Suite 130, SPC 1
Phoenix, AZ  85003-2118
602-322-7200

**CERTIFICATE OF SERVICE**

I hereby certify that on August 21st, 2023, I filed the foregoing document to the Clerk of the Court copy of the foregoing sent via U.S. mail to:

Dennis I. Wilenchik, #005350
John "Jack" D. Wilenchik, #029353
Jordan C. Wolff, #034110
admin@wb-law.com
*Attorneys for Defendant Kelly Townsend*

By: ___*SB*___