**WILENCHIK & BARTNESS**
— A PROFESSIONAL CORPORATION —

ATTORNEYS AT LAW
The Wilenchik & Bartness Building
2810 North Third Street  Phoenix, Arizona  85004

Telephone:  602-606-2810     Facsimile:  602-606-2811

Dennis I. Wilenchik, #005350
John "Jack" D. Wilenchik, #029353
admin@wb-law.com
*Attorneys for Defendant Kelly Townsend*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| **Staci Burk,** | Case No.:  **2:22-cv-01967-DMF** |
| **Plaintiff,** | |
| v. | **REPLY IN SUPPORT OF MOTION TO DISMISS THIRD AMENDED COMPLAINT WITH PREJUDICE** |
| **Senator Kelly Townsend, et al.,** | |
| **Defendant.** | |

Defendant Kelly Townsend ("Defendant", "Townsend" or "Senator Townsend") hereby files this Reply in Support of her Motion to Dismiss ("Motion") the Plaintiff's Third Amended Complaint ("TAC") with prejudice [Doc. 99]. The Motion should be granted and fees and costs awarded.

**I.      INTRODUCTION**

Plaintiff has still failed to plead state law causes of action that satisfy the Arizona notice of claim requirements, and her § 1983 claim against former Senator Townsend also fails due to legislative immunity and other reasons we have stated. As a result, Defendant Townsend respectfully requests that the Court dismiss the Complaint with prejudice because of the many opportunities Plaintiff has had to amend and because any further opportunity to amend would be futile. *Stanton v. Battelle Energy Alliance, LLC*, 83 F.Supp.3d 937, 949 (D. Idaho 2015) ((futility

and "repeated failure to cure deficiencies" as reasons to deny leave to amend) (citing *C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 985 n.5 (9th Cir. 2011)).

## II. LEGAL ARGUMENT

### A. Legal Standard

A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory" to survive a motion to dismiss under Rule 12(b)(6). *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In other words, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Iqbal,* 556 U.S. at 678) (emphasis added)). "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

In reviewing a motion to dismiss under Rule 12(b)(6), the reviewing court must assume the truth of all factual allegations and construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. *Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678, (citing *Twombly*, 550 U.S. at 557). Two working principles underlie *Twombly*. First, the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements. *Id.,* at 555. A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth. *Iqbal*, 556 U.S. 662, 663–64.

**B.    Plaintiff Has Pleaded Facts that Support that Senator Townsend Was Undertaking an Actual Investigation of the 2020 Election.**

In the TAC, Plaintiff attempts to undermine the legitimacy of, and motives behind, the Defendant's investigation of the 2020 election by conclusory allegations. [*See, e.g.*, TAC ¶¶ 30, 35, 108.] She further stresses the point in her Response brief ("Response") that it is only Defendant Townsend who claims that her investigation was legitimate[1]—not Plaintiff.[2] [Response at 1-2, 14.] Plaintiff also disputes that Defendant Townsend possessed authority to conduct such an investigation. [Response at 13-14 ("there was no active legislation or formal legislative inquiry that was ordered"; "the Arizona Legislature was not even in session when these events occurred in November 2020") (emphasis removed).]

Notwithstanding the foregoing, Plaintiff has still pleaded, at minimum, that: 1) Defendant Townsend was the Chair of the House Election Committee, [TAC ¶ 16]; and 2) that Defendant conducted an investigation (even if, allegedly, unauthorized or tainted by evil motives) into the 2020 election. These unambiguous facts are sufficient to support the legislative immunity and notice of claim arguments in Defendant Townsend's motion to dismiss.

Various facts in the TAC unambiguously support that Plaintiff pleaded that Townsend, in fact, conducted an investigation into the 2020 election as Chairman. Plaintiff admitted that on November 4, 2020, "Townsend publicly called upon citizens to assist in the election fraud

---

[1] Plaintiff's claims on this point are actually self-contradictory. She claims at one point that she "advanced Townsend's version of facts as Townsend presented them (i.e., her claims regarding authority to investigate election fraud), and absent proof to the contrary, Plaintiff gave Defendant the benefit of the doubt they were engaging in a legitimate investigation and inquiry into election fraud." [Response at 1.] Elsewhere however, she states that it is Defendant that "claimed [her] actions were part of a legitimate investigation" and that "Plaintiff pled Defendant's claims, not necessarily what was accurate." [Response at 14.] It was of course Plaintiff's burden to plead with accuracy. *See* Fed. R. Civ. P. 11(b). But, even if Plaintiff did effectively plead (in conclusory fashion) that the motives of the investigation were completely disingenuous, it could not save the TAC.

[2] Plaintiff also made this point during the "meet and confer" on March 29, 2024, and expressed that she should be entitled to leave to amend if that point was not clear. *See infra*. Defendant responded however that leave to amend would be futile because no matter how Plaintiff might amend, she has still plainly alleged and conceded that an official investigation, whether for good or evil motives, occurred.

3

investigation she was leading and publicly called for a full forensic audit." [TAC ¶ 15.] Plaintiff pleaded, based on her own personal knowledge, that Townsend "sought access to witnesses from Plaintiff and evidence to substantiate her allegations of election fraud"—characteristic steps in an official investigation. [TAC ¶ 17.] Again, based on personal knowledge, Plaintiff alleges "[T]ownsend sought the identity of the Seattle woman from Plaintiff, as well as the identity of a Maricopa County Election Center adjudication worker Townsend noticed on social media was known to Plaintiff." [TAC ¶ 19.] Plaintiff alleges that Townsend "sought direction from Powell regarding collecting evidence and affidavits to support her de facto law enforcement investigation." [TAC ¶ 32.] Plaintiff claims Townsend conspired with the other defendants "in furtherance of mutual pre-determined objectives to secure testimony and other evidence from Plaintiff to validate election fraud claims via an investigation into the 2020 election initiated by Townsend." [TAC ¶ 41.] In fact, the entire basis of Plaintiff's civil conspiracy claim is that Townsend "engaged in a voluntary agreement with Defendants Flynn and Powell to aid and assist her in carrying out a broad investigation into election fraud following the 2020 election." [TAC ¶ 108.] What the illegal end or aim of this alleged conspiracy was is not clear at all. Finally, Plaintiff repeatedly acknowledges that Townsend claimed[3] that she possessed authority to conduct "her investigative efforts." [*See, e.g.*, TAC ¶ 33.].

In sum, regardless of how Plaintiff would now like to characterize the investigation that occurred, Plaintiff simply cannot pretend that the TAC does not **both admit and rely on** the fact that Townsend was engaged in an actual investigation into the 2020 election. Nothing illicit or illegal about that investigation is alleged.

### C. Defendant Townsend's Legislative Immunity Defense is Meritorious

Plaintiff claims that Defendant Townsend's investigation was a "political act," and implies that Townsend's investigation was not "legitimate," without specifying why or how, to support her argument that legislative immunity should not apply here. [Response at 14-15.] Plaintiff further claims that Townsend's cited case *Fann v. Kemp* is distinguishable because the court's holding that "legislative immunity applied to all legislative investigations" was limited to cases

---

[3] Even if true, what Townsend "claimed" is not actionable.

where "there was active legislation or legislation was being formally contemplated by the legislature itself in an official capacity." [*Id.* at 13.] Plaintiff's characterizations of both the investigation and the *Kemp* case, however, are legally erroneous, and contradict the facts pleaded in the TAC. *Supra*, Section B.

In fact, the court in *Fann v. Kemp* held the exact opposite of what Plaintiff argues. The *Kemp* court made very explicit that there need be no "active legislation" nor a situation where legislation is "being formally contemplated" to find that legislative immunity applied. *Fann v. Kemp*, 253 Ariz. 537, 544 (2022). Instead, the Court reasoned that "curtailment of the privilege's scope to communications concerning proposed or pending legislation would discourage wise or effective evaluation of the very necessity of legislation." *Id.* at 544-45 ("the legitimacy of a [legislative] inquiry is not defined by what it produces. The very nature of the investigative function—like any research—is that it takes the searchers up some 'blind alleys.'").

Although the *Kemp* court cited *Steiger*—which Plaintiff also cites—for the proposition that some investigations by legislators might be outside the scope of the legislative process, *id.* (*citing Steiger v. Superior Ct.*, 112 Ariz. 1, 3 (1975)), the key distinguishing factor in determining which investigations were protected by legislative immunity and which were not was solely the "subject" of the investigation. *Id.* The court held, "[i]f the investigative topic concerns 'a **subject** on which "legislation could be had,"' it 'is related to and in furtherance of a legitimate legislative act.'" *Id.* (emphasis added) (*quoting Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 503 (1975)). Thus, the Arizona Supreme Court concluded that the Senate's investigation of the 2022 election was protected by legislative privilege/immunity because election investigations are categorically "subject[s] on which 'legislation could be had'" based on the legislature's clear "authority to enact substantive election laws." *Id.* The unambiguous "subject" of Senator Townsend's investigation was **the very same 2022 election**. *Supra*, Section B. As a result, Defendant Townsend is plainly legislatively immune from suit for Plaintiff's claims against her, all of which Plaintiff alleges occurred in furtherance of Defendant's election investigation. [Mot. at 5.]

1. **The Fact That the Investigation Occurred During a Recess, That it Had a Political Dimension, or That a Single Legislator Conducted It Are All Irrelevant to the Legislative Immunity Inquiry.**

Plaintiff raises various "straw man" type arguments against applying legislative immunity including that the investigation occurred during a recess[4]; that it was political; and that Defendant Townsend conducted the investigation on her own recognizance. [Response at 14-15.] None of these have merit under the *Fann v. Kemp* controlling precedent.

In fact, the court in *Kemp* cited the Restatement for the proposition that legislative immunity/privilege extends to investigations that occur either "while [a legislative] body is in session **or during a recess**." *Kemp*, 253 Ariz. at 545 (emphasis added). Moreover, the *Kemp* court firmly held that it would only consider the **subject** of the investigation, rather than any alleged motivation for that investigation, in determining whether to apply legislative immunity. *Id.* at 547. ("Despite the unique politicization of the Audit, any purported political motive for the legislature's action in pursuing the Audit is irrelevant."). Finally, in distinguishing *Steiger*, the *Kemp* court chose its words carefully and lent support to the notion that a single legislator's investigation would still be privileged/immune so long as it focused on the appropriate subject. *Id.* at 545. Thus, Plaintiff's arguments here fail, and legislative immunity plainly applies.

2. **Plaintiff's Cited Cases Are Inapposite.**

Plaintiff cites various cases in support of her argument that legislative immunity does not apply, none of which are on point or controlling.

Plaintiff erroneously cites *Blassingame v. Trump,* for example, for the proposition that immunity cannot be extended to "office seeking" activities based on Townsend running for re-election at the time of the investigation. [Response at 10, 15.] *Blassingame*, however, addressed whether **Presidential** immunity applied to the former President's activities campaigning for re-election and obviously has no application to the doctrine of legislative immunity here. 87 F. 4th 1 (D.C. Cir. 2023). In any event, whether Townsend was also running for re-election is irrelevant. Likewise, though Plaintiff generally alleges (in her Response—not in the Complaint) that

---

[4] Though not pleaded in Plaintiff's complaint, Defendant acknowledges that the Court may take judicial notice of the dates when the legislature was in session in 2020.

Townsend was an "office seeker," Plaintiff does not assert that the investigation was aimed at ensuring Townsend's re-election; that Townsend's re-election was ever in doubt or the motivation; nor that the investigation gave even a minor focus to Townsend's re-election. Instead, Plaintiff admits that Townsend began the investigation before even a fraction of votes were counted, and continued the investigation long after her own re-election was firmly established (without the investigation contributing anything thereto). *See supra* Section B. Thus, *Blassingame* plainly does not apply.

Plaintiff erroneously asserts that *Morley v. Walker* similarly involved legislative immunity, when in fact Walker solely involved whether and when a prosecutor is immune from suit in certain Section 1983 cases. *Morley v. Walker*, 175 F.3d 756 (9th Cir. 1999). Likewise, another of Plaintiff's cited cases, *Thomas v. Baca* is inapposite because *Thomas* did not involve whether an investigation constituted a legislative act, which, as discussed above, *supra*, depends solely on the "subject" of the investigation. *Thomas v. Baca*, 2005 WL 1030247, at *4 (C.D. Cal. May 2, 2005) (noting only that it was unclear whether "supervision" of Sheriff by local legislators would be deemed executive or legislative at early stage of proceedings). Moreover, *Thomas* also **contradicts** Plaintiff's claim that legislative immunity cannot be decided at the motion to dismiss stage because the *Thomas* court **did**, in fact, dismiss one of the plaintiff's claims based on legislative immunity clearly applying[5]. *Id.*

Finally, *Steiger v. Superior Ct.* is also easily distinguishable, as *Steiger* involved an investigation into a single business and whether that business was involved in criminal activity with respect to sporting events. 112 Ariz. 1 (1975). Although "sporting events" likely is a general area about which the legislature may legislate (in some fashion), an individual business plainly is not. Thus, the court in *Kemp*, itself, distinguished *Steiger* based on the "personal, reputational, and political nature **of the investigation**" at issue in that case. *Kemp*, 253 Ariz. at 545 (emphasis added). Here, despite Plaintiff's attempts to make the investigation about her personally, even

---

[5] The whole point of legislative immunity it to protect legislators from undergoing any part of the litigation or prosecution process so that they might be able to perform their legislative tasks without fear of reprisal in court. *See Kemp*, 253 Ariz. at 543. Thus, Plaintiff's notion that legislative immunity cannot be decided at the motion to dismiss stage is completely false.

1  Plaintiff admits that the investigation was not "about her" but only involved Defendant attempting
2  to determine what Plaintiff may have **known** about the potential larger scale election fraud that
3  was, in fact, the subject of the investigation. [TAC ¶¶ 15, 17, 19, 32, 41, 108.] Here, the
4  investigation in this case is significantly closer to *Kemp* than to *Steiger* because it involves the
5  exact same subject as the investigation in *Kemp*. Thus, *Steiger* is inapplicable, and under *Kemp*,
6  legislative immunity plainly applies here.

       D.    **A Notice of Claim Was Plainly Required with Respect to Plaintiff's State Law Causes of Action.**

9      Plaintiff claims that Townsend's actions were outside the scope of her employment duties
10 as a legislator, and therefore, that the Notice of Claim statute does not apply. [Response at 18.]
11 Plaintiff claims that even if Townsend was acting within her scope of employment with respect
12 to the investigation, she was "certainly not [doing so] regarding her direct actions against
13 Plaintiff." [*Id.* at 20.] Plaintiff also claims that she attempted to plead that Plaintiff's duties were
14 outside the scope of employment and, at minimum, should receive an opportunity to amend to do
15 so. [*Id.*] Plaintiff's arguments fail for several reasons.

16      First, for the same reasons discussed with respect to legislative immunity, *supra*,
17 investigating the 2020 election, whether during formal legislative session or during a recess, is the
18 kind of task Townsend was "employed" to perform and quintessentially furthers the legislature's
19 legitimate business. *Villasensor v. Evans*, 241 Ariz. 300, 303 (App. Ct. 2016). Moreover, Plaintiff
20 has clearly pleaded that Townsend's "direct actions against [her]" were incidental to Townsend's
21 investigation into the election. [Mot. at 4 (*citing* TAC ¶¶ 16, 17, 20, 22, 24, 26, 30, 31-36, 38c,
22 39d, 41, 42, 45, 50, 52, 62, 78, 108.] All such incidental actions are plainly covered within the
23 scope of employment inquiry. *Dube v. Desai*, 218 Ariz. 362, 365 (App. Ct. 2008) ("An employee's
24 improper actions, even those serving personal desires, will be deemed motivated to serve the
25 employer if those actions are incidental to the employee's legitimate work activity.").

26      Finally, although Plaintiff might want the opportunity to amend to assert the legal
27 conclusion that Townsend was acting outside the scope of her employment, any such assertion is
28 plainly belied by the facts pleaded in the Complaint, and Plaintiff has not actually sought leave to

8

do so or provided an amended complaint that would not similarly be dismissed for futility. [Mot. at 4.] In fact, for each of her state law claims, Plaintiff pleaded specific facts that demonstrate that either her claims against Defendants **depend** on an agreement to jointly pursue the investigation or were incidental to that investigation. Plaintiff pleads, as follows: 1) that Townsend "engaged in a voluntary agreement with Defendants Flynn and Powell to aid and assist her in carrying out an broad investigation into election fraud", [TAC ¶ 108 (civil conspiracy count)]; 2) that Defendants sought out Plaintiff "after learning Plaintiff had knowledge about election fraud witnesses and information they sought" and that Defendants actions invasion of privacy action were committed "while aggressively seeking access to witnesses and evidence", [*id.* ¶ 113 (invasion of privacy count)]; 3) that Townsend inflicted emotional distress on Plaintiff "as part of an aggressive attempt to investigate or create a pretext for investigating election fraud", [*id.* ¶ 123 (NIED count)]; 4) that Plaintiff was assaulted by Townsend, personally and by and through her agents, "in [her] aggressive attempts to investigate…to gain access to fact witnesses they sought", [*id.* ¶ 127 (assault count)]; and 5) that Townsend falsely imprisoned Plaintiff "[a]s part of [her] aggressive effort to investigate election fraud", [*id.* ¶ 130 (false imprisonment count)]. The TAC speaks for itself. The notice of claim requirement plainly applies here and was not observed. Thus, Plaintiff's failure to do so "bars the court from considering liability" on Plaintiff's state law causes of action. *Swenson v. County of Pinal*, 243 Ariz. 122, 127 (App. Ct. 2017).

Finally, the TAC relies so heavily on the premise that Townsend's actions were undertaken in furtherance of her investigation that it would be futile to permit Plaintiff to amend to attempt to plead around this issue, even had she followed Rule 15 and had provided a proposed amended complaint.[6] Plaintiff also had prior notice that Defendants intended to claim the notice of claim

---

[6] Plaintiff impermissibly raises the notion, not pleaded in the TAC, that the Speaker of the House opposed convening a special legislative session as Townsend wanted, and stated that Townsend's "'hearing' at the Hyatt hotel…was not an official legislative act." [Response at 15.] Plaintiff, however, identifies no inference (and none exists) for how another political actor's opinion—regarding the equivalent of a press conference or a summit—negates the existence of Townsend's separate investigation of the 2020 election as a legislator. Thus, permitting Plaintiff to amend to allege these additional details would also be futile and would not help the TAC at all.

9

statute applied to all her state law claims and failed to effectively do so. [*See* Townsend First MTD (Dkt. No. 13) at 5.] Thus, leave to amend would be both futile and inappropriate here.

### E. Sections VI and VII of the Response Are Not Responsive to Defendant Townsend's Motion and Should be Ignored; Likewise, Plaintiff's Assertion that All Her Argument Against Defendant Flynn Likewise Applies to Townsend Must Also Be Ignored.

In her Response, Plaintiff claims the Statute of Limitations was met (Section VI) and the state law claims are sufficiently pleaded (Section VII). [Response at 21-23.] Neither argument was raised in Townsend's Motion, but instead both issues are solely raised in co-defendant Flynn's Motion to Dismiss. Likewise, Plaintiff claims to "incorporate[] all legal case citations and legal references and arguments outlined in her Response to Defendant Flynn's Motion to Dismiss." [Response at 2.] This is impermissible and a direct violation of the Court's order that Plaintiff "file one response to [Townsend's Motion] and shall separately file one response to Defendant Flynn's Motion." [Feb. 8, 2024 Order (Dkt. No. 112).] Townsend should not have to attempt to respond to two Response briefs in one Reply brief. Although Townsend joined in Flynn's motion to dismiss, any such joinder was solely relevant to Plaintiff's Response brief to Defendant Flynn's motion. Therefore, both these sections and any other arguments against Defendant Flynn's separate motion should not be considered with respect to Defendant Townsend's Motion.

### F. Plaintiff Failed to State a Claim Under U.S.C. § 1983

Plaintiff fails to squarely address Townsend's arguments that no seizure occurred by Townsend (or Townsend's alleged agents) as against Plaintiff and that emotional harm cannot form the basis for a § 1983 claim. [Mot. at 5-8.] Instead, besides reciting a litany of facts not pleaded in the TAC, Plaintiff only argues that Townsend can still be liable for the behavior of her "agents" based on the state-created danger and special relationship exceptions to the normal rule that the state's failure to prevent acts of private parties typically does not implicate the due process clause. [Response at 6.] This argument still does not address Townsend's argument that Plaintiff was not "seized", whether by Townsend or her agents, in the meaning of the Fourth Amendment. Likewise, the special relationship exception only applies to situations where an individual is actually in state custody, such as persons in prison, those committed to an institution or children

in foster care. *Murguia v. Langdon*, 61 F. 4th 1096, 1110 (9th Cir. 2023) ("[T]he facts of this case simply do not resemble those in which courts have found a custodial relationship for the purposes of imposing § 1983 liability.").

Finally, Plaintiff's argument with respect to the state created danger exception seems to relate solely to her claim that she has a heart condition, of which Townsend was aware,[7] and that Townsend was somehow deliberately indifferent to that condition resulting in damages in the form of a hospitalization and exacerbation of that condition. First, even if the court were inclined to accept these half-pleaded allegations or grant leave to amend, the state-created danger exception would apply solely to damages based on Plaintiff's heart condition—which is the only condition Plaintiff now claims Defendant was allegedly aware of in advance—but she also hasn't alleged that Townsend knew enough about such condition to **know** that the alleged actions would result in an exacerbation of the purported condition. *Id.* ("the state actor must 'know that something **is** going to happen but ignore[] the risk and expose[] the plaintiff to it"). Moreover, any damages under § 1983 on any other basis than the heart condition would still be subject to dismissal.

In addition, Plaintiff cannot simultaneously claim that the "state" placed Plaintiff in danger while also claiming that Defendant Townsend was only acting in her individual capacity under color of law and not in any official capacity. Plaintiff cannot have her cake and eat it too.

Thus, for all these reasons, the § 1983 claims must still be dismissed.

### G. The Motion Should Not Be Denied Under the Circumstances for Townsend's Failing to Meet and Confer Prior to Filing the Motion, and Leave to Amend Should Be Denied for the Same Reasons.

Plaintiff complains that the motion to dismiss should be denied due to Townsend inadvertently failing to meet and confer in advance of filing the Motion in accordance with Local Rule 12.1(c). However, both for substantive reasons and given the court's warning that the Third Amended Complaint was likely Plaintiff's "last time" to amend, any such meeting would have been pointless because amendment was not possible. In addition, Townsend's main arguments of legislative immunity and failure to serve a notice of claim should be adjudicated on the merits

---

[7] Plaintiff does not plead Townsend's awareness of her heart condition in the TAC.

because of the special nature of those defenses and because Plaintiff had prior notice of the notice of claim argument from an earlier motion to dismiss. *Supra*.

On November 30, 2023, this Court raised concerns not only that Plaintiff failed to allege valid causes of action (including a valid federal claim "thereby depriving this Court of jurisdiction"), but also that "Plaintiff may be using this forum for improper purposes rather than to raise valid legal claims." [Dkt. No. 75 at 1–2.] The Court indicated that it would allow an amendment "perhaps for the last time" to file the operative complaint. *Id.* at 2.

Defendant realized after reviewing Plaintiff's Response that Defendant inadvertently forgot to conduct the required Rule 12.1(c) meet and confer. Thus, on March 29, 2024, Defendant contacted Plaintiff to do a meet and confer. Though Plaintiff expressed that some of the arguments in Defendant's Motion could have been addressed by amendment, particularly with respect to legislative immunity and the notice of claim argument, Defendant fundamentally disagreed, given how pervasive and fundamental Defendant's conduct of the investigation plainly is to Plaintiff's claims. *See supra*. As a result, even if the Rule 12.1(c) meeting had occurred before the Complaint was filed Defendant would not have agreed to any form of amendment based on the belief that amendment was futile and that Plaintiff had been given sufficient chances already to amend.

Moreover, "striking a motion for failure to fulfill Local Rule 12.1(c)'s 'meet and confer' requirement is unnecessary 'when the movant promptly takes active steps to cure any harm caused by the failure.'" *Nees v. City of Phoenix*, No. CV-21-01134-PHXGMS, 2022 WL 110188, at *1 (D. Ariz. Jan. 12, 2022) (*citing Wine Educ. Council v. Ariz. Rangers*, No. CV-19-02235-PHX-SMB, 2020 WL 7352632, at *8 (D. Ariz. Dec. 15, 2020)). Here, there was no "harm" and no prejudice, and Defendant conducted a meet and confer with Plaintiff once Defendant realized the inadvertent error.

Finally, this is a unique situation based on the legislative immunity and notice of claim arguments asserted. Plaintiff was on prior notice from an earlier motion to dismiss that Defendant would argue that Plaintiff's claims were deficient for failure to serve a notice of claim. Plaintiff has had almost one year to supplement her complaint to address the point and still has not done so. In addition, the very purpose of legislative immunity is to protect Defendant from ever

undergoing even the commencement of a civil prosecution related to her legislative work. *Arizona Independent Redistricting Com'n v. Fields*, 206 Ariz. 130, 137 (App. Ct. 2003) (legislators "should be protected not only from the consequences of litigation's results but also from the burden of defending themselves") (*quoting Dombrowski v. Eastland*, 387 U.S. 82, 84–85 (1967)). This litigation, however, has already been ongoing at the motion to dismiss stage for **more than one year**. Thus, Townsend respectfully submits that the appropriate time to address her legislative immunity argument on the merits is now, and the Local Rule 12.1(c) requirement should not bar or postpone resolution of this important issue where Defendant took corrective action and there has been no harm or prejudice.

For all these reasons, Defendant respectfully requests that the Court both consider this Motion on the merits and deny Plaintiff's request for leave to amend as futile.

### H. All of the Factual Allegations Not Present in the TAC Should Be Ignored.

Plaintiff adds myriad factual allegations to her Response that do not appear in the TAC.[8] Critically, none of these allegations make any difference to Defendant's legal arguments for dismissal, but they still should not be considered. The Court should ignore these additional or "developing" factual points as irrelevant to Defendant's motion.

### CONCLUSION

For all the reasons stated herein, Plaintiff still has failed to state her state common law claims against this Defendant, even were they made as to her in an individual capacity, because of failure to provide proper notice of the same under the statutory requirement. And, Plaintiff still fails to state a claim upon which relief may be granted as to a § 1983 claim against Defendant Townsend based on legislative immunity, and for the other reasons herein stated. Accordingly, Defendant respectfully requests that the Court dismiss the Third Amended Complaint with prejudice and award Defendant costs and fees.

---

[8] Plaintiff requests that the court take judicial notice of some allegations appearing in the Second Amended Complaint only. However, though those allegations could be used against Plaintiff as admissions, they should not be permitted to supplement Plaintiff's operative complaint, which must stand or fall on its own.

## RULE 12.1(C) CERTIFICATION

Pursuant to LRCiv 12.1, Dennis Wilenchik, counsel for Defendant Townsend, certifies that **on March 29, 2024**, Defendant through firm counsel belatedly met and conferred with Plaintiff about the issues asserted in Defendant's Motion to Dismiss and the instant Reply brief and were unable to agree that amendment would have avoided or would still avoid any of the issues raised.

**RESPECTFULLY SUBMITTED** on April 1, 2024.

**WILENCHIK & BARTNESS, P.C.**

 */s/ Dennis I. Wilenchik*
Dennis I. Wilenchik, Esq.
John "Jack" D. Wilenchik, Esq.
2810 North Third Street
Phoenix, Arizona 85004
admin@wb-law.com
*Attorneys for Defendant Townsend*

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2024, I electronically transmitted the foregoing document to the Clerk of the Court through the CM/ECF system, which will send a Notice of Electronic Filing to all CM/ECF registrants for this matter and copy of the foregoing sent via U.S. mail to:

Staci Burk
2487 Gilbert Road, #106-609
Gilbert, AZ 85295
stacigriffinburk@yahoo.com
*Pro Se Plaintiff*

*/s/ Christine M. Ferreira*